IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JEREMIAH J. LAMBERT,                                OPINION AND
                                                    ORDER
           Plaintiff,
                                                    09-cv-212-bbc
   v.

KELLY KUTINA, JASON RAYMER and
KOREEN FRISK,

           Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Jeremiah Lambert is proceeding in forma pauperis on his claim under 42 U.S.C. § 1983 that defendants Kelly Kutina, Jason Raymer, and Koreen Frisk violated his Eighth Amendment rights by failing to provide him treatment for his asthma symptoms in December 2008. The case is before the court on defendants' motion for summary judgment, in which defendants contend that they were not aware that plaintiff had a serious medical need. Viewing the facts in the light most favorable to plaintiff, as I must, I conclude that a reasonable jury could find that all defendants knew that plaintiff needed medical assistance. Accordingly, I will deny defendants' motion for summary judgment.

From the parties' proposed findings of fact, I find that the following facts are

1

undisputed and material.

UNDISPUTED FACTS

Plaintiff Jeremiah J. Lambert is an inmate at the New Lisbon Correctional Institution in New Lisbon, Wisconsin. He has had asthma since he was a child. The condition was diagnosed as chronic in 2006 by a doctor at the Wisconsin Department of Corrections. Defendants Kelly Kutina and Jason Raymer are employed by the Wisconsin Department of Corrections as correctional officers at New Lisbon. Defendants Kutina's and Raymer's responsibilities include supporting unit staff, maintaining security of the institution, preserving the safety of inmates on their units and performing general tasks within the housing units. Defendant Koreen Frisk is employed at the prison as a nurse clinician in the Health Services Unit. Frisk's duties include patient assessment and treatment, assisting the physician in providing medical services, management of medications, provision of emergency care and maintenance of medical records.

On November 12, 2008, plaintiff received a new inhaler for his asthma. On December 5, 2008, he was placed in the segregation unit because of an investigation of possible contraband at one of the prison work shops. Plaintiff was unable to bring any of his personal items to the segregation unit, including his asthma inhaler. In most cases, an inmate who has a current prescription for a rescue asthma inhaler is allowed to keep it on

him or in his cell.

After plaintiff was moved to the segregation unit, he "started to wheeze and had slight difficulty breathing." When a correctional officer (not a defendant in this case) began to pass out medications after dinner, plaintiff asked for his inhaler, but the officer did not have it. The officer told plaintiff he "would see if he could get" the inhaler, but he did not return.

Plaintiff fell asleep. When he awoke later that night, he was wheezing and his chest felt tight; he believed he was having an asthma attack. Plaintiff pressed the emergency button in his cell, and an officer asked plaintiff over the intercom, "What is your medical emergency?" Plaintiff told this officer that he needed his asthma inhaler.

Later, defendant Kutina, who was working the third shift in the segregation unit on December 5, 2008, came to plaintiff's cell. (The parties do not say whether Kutina was the officer who answered plaintiff's emergency call or whether Kutina was sent to speak with plaintiff in response to that call.) Plaintiff told Kutina that he "needed" his inhaler. (The parties dispute whether plaintiff told Kutina that he was having trouble breathing, whether Kutina asked plaintiff, "Are you going to be all right?," and whether plaintiff responded, "No, I need my inhaler.") Plaintiff did not tell Kutina that he was having an asthma attack.

Defendant Kutina contacted defendant Frisk, who was the on-call nurse at the Health Services Unit, to ask about defendant's inhaler. Kutina did not inform Frisk that plaintiff was having trouble breathing. (There seems to be a dispute between Kutina and Frisk

3

regarding what Kutina told Frisk.  Kutina says he told Frisk that plaintiff had requested his inhaler.  Frisk says that he asked only whether plaintiff's inhaler was at the Health Services Unit.)  Frisk reviewed plaintiff's medical chart.  The cover of his medical file has a red sticker that states "MEDICAL ALERT," and the inside cover has a yellow or orange sticker that states "RESPIRATORY CONDITION."  After reviewing the physician's orders, Frisk determined that the order for the asthma inhaler had expired.  (The parties dispute whether she had any basis for this determination.)  Frisk told Kutina that plaintiff would need to make an appointment to see the physician to renew his prescription.   Frisk did not come to the segregation unit to assess plaintiff's condition or issue plaintiff an inhaler by calling the on-call physician, even though she could have.

      Defendant Kutina returned to plaintiff's cell and told him that his prescription had expired; if he wanted an inhaler, he would have to fill out a Health Services Request slip.  (The parties dispute whether Kutina told plaintiff there was "nothing he could do for him," whether plaintiff told Kutina twice that he needed to see the nurse and whether plaintiff repeated that he really needed his inhaler.)  Plaintiff asked Kutina for a request slip, received it at 11:57 p.m. and filled it out.  At 12:50 a.m. Kutina picked up the slip.  (The parties dispute whether plaintiff told Kutina again that he was having trouble breathing, needed his inhaler, and whether he asked to see the nurse again.  They also dispute whether plaintiff asked Kutina "what am I supposed to do, my asthma is not just going to get better and it's

4

not going to go away on its own?" and whether Kutina said "I understand" before walking away.)

During the night, it became more and more difficult for plaintiff to breathe. To get more air, he placed his nose and mouth against the forced air vent in his cell. He was unable to sleep because he was afraid he would not wake up.

Around 7:00 a.m. the next morning, December 6, 2008, defendant Raymer was passing out medication in the segregation unit. Plaintiff said that he needed his inhaler, but Raymer did not have it. (The parties dispute whether plaintiff told Raymer that he had been asking for an inhaler since the previous night and was forced to lie on the floor of his cell for air and whether Raymer said there was nothing Raymer could do.) Raymer could have contacted his supervisor or the Health Services Unit had he had any concerns about plaintiff's health.

Plaintiff's new inhaler left the Health Services Unit at 9:30 a.m. on December 6. The Health Services Unit is one minute away from the segregation unit where plaintiff was housed. Plaintiff received the inhaler at 11:15 a.m. (The parties dispute whether Raymer was the one who delivered the inhaler to plaintiff.)

On December 12, 2008, plaintiff filed a complaint with the Department of Corrections. In reviewing the complaint, Sharon Zunker, the Nursing Coordinator for the Department of Corrections, stated that "any inmate request for a rescue inhaler should be

5

acted upon by security and health staff immediately." Plaintiff has now exhausted his administrative remedies.

OPINION

To withstand summary judgment, plaintiff must adduce facts from which a reasonable jury could infer that he had a "serious medical need" and that defendants were "deliberately indifferent" to his need. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). A "serious medical need" is a condition that has been diagnosed by a doctor as needing treatment or one that is so obvious even a lay person would recognize the need for treatment. Johnson v. Snyder, 444 F.3d, 579, 584-85 (7th Cir. 2006). A condition may be serious if it causes significant pain, Cooper v. Casey, 97 F.3d 914, 916-17 (7th Cir. 1996), or subjects the individual to a substantial risk of serious harm, Farmer v. Brennan, 511 U.S. 825 (1994). However, the condition does not need to be life-threatening. Johnson, 444 F.3d at 584-85.

The Court of Appeals for the Seventh Circuit has recognized that asthma "can be, and frequently is, a serious medical condition, depending on the severity of the attacks." Board v. Farnham, 394 F.3d 469, 484 (7th Cir. 2005); see also Garvin v. Armstrong, 236 F.3d 896, 898 (7th Cir. 2001) ("Asthma, depending on its degree, can be a serious medical condition."). "Deliberate indifference" means that state officials knew a prisoner needed medical treatment, but disregarded the risk by failing to respond reasonably to the medical

6

condition.  Forbes v. Edgar, 112 F.3d 262, 266 (7th Cir. 1997).

### A.  Serious Medical Need

Defendants concede for the purpose of summary judgment that plaintiff developed a serious medical need during the night on December 5, 2008 when he was forced to place his face against the vent in his cell to breathe.  Dkt. # 33 at 5.  However, they contend that plaintiff did not have a serious medical need when he spoke to defendant Kutina.

It is undisputed that plaintiff has had asthma since he was a child and that it was diagnosed as chronic in 2006 by a doctor at the Wisconsin Department of Corrections.  This condition "can be, and frequently is, a serious medical condition."  Farnham, 394 F.3d at 484.  Accordingly, the question is whether plaintiff was experiencing asthma symptoms serious enough to require treatment when he spoke to Kutina.  This is a "fact questio[n], to be resolved by a jury if a plaintiff provides enough evidence to survive summary judgment."  Gayton v. McCoy, 593 F.3d 610, 620 (7th Cir. 2010).  See also Hudson v. McHugh, 148 F.3d 859, 864 (7th Cir. 1998) ("drawing the inference of a serious medical need is a question of fact").

Plaintiff testified that he awoke soon after dinner on December 5, 2008, with a tight chest; he was wheezing and believed he was having an asthma attack.  He continued to say he was having difficulty breathing when defendant Kutina stopped by his cell on three

occasions.

There can be no serious dispute that an inability to breathe presents a serious and urgent medical need. Even a short delay in providing assistance in such a case could prove fatal. E.g., Krout v. Goemmer, 583 F.3d 557, 568 (8th Cir. 2009) (assuming that "difficulty breathing" is serious medical need); Harrison v. Ash, 539 F.3d 510, 515 (6th Cir. 2008) (discussing claim brought by estate of prisoner who died after asthma attack); Pietrafeso v. Lawrence County, 452 F.3d 978 (8th Cir. 2006) (same). Although plaintiff's situation may not have been life-threatening, it is enough that plaintiff alleges his difficulty breathing rose to a level that he experienced significant distress and believed he was suffering from an asthma attack. Johnson, 444 F.3d at 584-85.

Defendants cite Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999), for the proposition that "breathing problems" may be a "relatively minor" ailment not amounting to a serious medical need. Although defendants cite Henderson accurately, they do so out of context. The question in Henderson was whether a prisoner stated a claim under the Eighth Amendment by alleging in conclusory fashion that exposure to second hand smoke generally "caused him to experience difficulty breathing." Id. at 842. Those allegations cannot be compared to the acute symptoms experienced by someone who suffers from asthma. Compare Lee v. Young, 533 F.3d 505, 510 (7th Cir. 2008) (distinguishing Henderson in case involving plaintiff with asthma that "act[ed] up").

8

Accordingly, I conclude that plaintiff has adduced enough evidence of a serious medical need to survive summary judgment on this element.

B. <u>Defendants' Awareness of Plaintiff's Serious Medical Need</u>

Even if plaintiff had a serious medical need, it is necessary to determine whether defendants knew about his need for treatment. They deny that they did. Because each defendant had different interactions with plaintiff, reflecting differing levels of knowledge, I will discuss each one separately.

1. <u>Defendant Kutina</u>

The question is whether plaintiff conveyed enough information to Kutina to make it known to him that plaintiff had a serious medical need when he was experiencing breathing difficulties, or at a minimum, whether Kutina "declined to confirm inferences of risk that he strongly suspected to exist." <u>Farmer</u>, 511 U.S. at 843. I conclude that there are genuine issues of material fact precluding entry of summary judgment for defendant Kutina. It remains disputed whether Kutina knew about plaintiff's medical need and was thus deliberately indifferent.

Viewing the evidence in the light most favorable to plaintiff, defendant Kutina was aware of the following facts:

9

- plaintiff said he "needed" his inhaler when Kutina first stopped by his cell; when Kutina asked whether plaintiff was "going to be all right," plaintiff responded, "No, I need my inhaler";

- plaintiff repeated that he needed his inhaler various times throughout the evening;

- plaintiff asked to see the nurse multiple times;

- plaintiff told Kutina multiple times that he was having trouble breathing;

- plaintiff told Kutina his "asthma [was] not just going to get better" and "go away on its own."

Defendant Kutina does not suggest that he would have had any reason to question plaintiff's statements. That may be why defendants do not rely on Williams v. Rodriguez, 509 F.3d 392 (7th Cir. 2007), which has some superficial similarity to this case because it involved the claim of a detainee with asthma who was denied treatment. However, in that case, the plaintiff told the defendant that he was having difficulty breathing immediately after he was asked to perform a breathalyzer test. The court concluded that the plaintiff's report of symptoms

> when arising in the context of a request . . . to take a breathalyzer test, [is] insufficient by [itself] to show that [he] was suffering from a serious asthma attack. At no other point during processing did [he] affirmatively request his inhaler or any medical attention from [the defendant] or any of the other officers present.

Id. at 402. Unlike the detainee in Williams, plaintiff requested his inhaler repeatedly throughout the evening and defendants have identified no ulterior motive for such a claim.

10

Thus, Williams is not instructive. Compare Goebert v. Lee County, 510 F.3d 1312, 1329 (11th Cir. 2007) ("[A] deliberate decision to automatically disbelieve all inmate statements about medical care, regardless of the circumstances, amounts to . . . deliberate indifference to the true facts of an inmate's medical condition and needs.")

Defendants emphasize that plaintiff did not use the phrase "asthma attack" when complaining to Kutina, but I do not agree that it is dispositive of the case. Defendants fail to explain why a prisoner must use "magic words" before triggering a duty to act. According to plaintiff, he told Kutina multiple times and in multiple ways that he was having difficulty breathing. Whether or not plaintiff said he was having an "attack" is irrelevant if plaintiff otherwise communicated that he needed help.

Defendant Kutina also denies that he saw plaintiff exhibiting any symptoms. However, because plaintiff says that he was exhibiting symptoms, for the purpose of deciding defendants' motion, I must assume that he was.

Accordingly, I conclude that plaintiff has raised a genuine issue of material fact about defendant Kutina's awareness of plaintiff's serious medical need. If the factfinder believes plaintiff's version of his reports to Kutina, it could find reasonably that Kutina knew plaintiff needed prompt medical attention. Because defendants do not discuss whether Kutina responded reasonably, I do not address that point in this opinion. Sublett v. John Wiley & Sons, Inc., 463 F.3d 731, 736 (7th Cir. 2006) ("[I]f the moving party does not raise an issue

11

in support of its motion for summary judgment, the nonmoving party is not required to present evidence on that point, and the district court should not rely on that ground in its decision.") However, it will be plaintiff's burden to prove at trial that Kutina's report to defendant Frisk was an unreasonable response under the Eighth Amendment.

2. Defendant Frisk

Whether defendant Frisk knew about plaintiff's serious medical need is a much closer case because she had no direct contact with plaintiff. Even so, I find that a reasonable jury could conclude that Frisk consciously avoided acquiring more knowledge about plaintiff's serious medical need, which can constitute deliberate indifference. Farmer, 511 U.S. at 843 n.8 (a defendant may "not escape liability if the evidence show[s] that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist"); McGill v. Duckworth, 944 F.2d 344, 351 (7th Cir. 1991) ("going out of your way to avoid acquiring unwelcome knowledge is a species of intent"); Velez v. Johnson, 395 F.3d 732, 736 (7th Cir. 2005) (deliberate indifference could be inferred when guard knowingly disregarded warnings that serious harm could occur by failing to investigate emergency call made by inmate).

It is undisputed that Frisk did not have personal knowledge of plaintiff's medical condition because she did not interact with him. However, if I credit Kutina's testimony

12

that he told Frisk about plaintiff's request for his inhaler, which I am required to do at this stage, then I find that there is some evidence that Frisk turned a blind eye to plaintiff's serious medical need. It is reasonable to infer that as a nurse, Frisk knows that inhalers are used for asthma attacks and that a request for an inhaler means an inmate might be having an asthma attack. Further, the potential seriousness of an inmate's request for an inhaler is consistent with Nursing Coordinator Sharon Zunker's later statement that "any inmate request for an inhaler should be acted upon by security and health staff immediately." In addition, the inhaler was requested from an inmate whose medical chart has a red MEDICAL ALERT sticker on the front of his file and a yellow or orange RESPIRATORY CONDITION sticker on the inside cover. It is reasonable to infer that Frisk saw these stickers when she checked plaintiff's file to see whether his inhaler order was expired and was placed on notice about plaintiff's condition. Nevertheless, Frisk did nothing to check up on the problem. She did not ask Kutina any further questions and did not visit plaintiff in his cell to evaluate his condition.

From these facts, a jury could infer that Frisk turned a blind eye for fear of what she might see. In fact, other courts have found that once a prison official becomes aware of a risk of harm, that individual cannot avoid a finding of deliberate indifference by simply burying her head in the sand and refusing to look into the matter. Farmer, 511 U.S. at 843; McGill, 944 F.2d at 351. Here, a jury could infer that Frisk stuck her head in the sand when

13

she refused to investigate plaintiff's condition after learning that he had asked for his inhaler, even though she was aware of the possibility that a request for an inhaler could mean an inmate was experiencing an asthma attack. Thus, although Frisk did not communicate directly with plaintiff, a jury could conclude that she knew about plaintiff's serious medical need. As with Kutina, defendants do not discuss whether Frisk responded reasonably, so I do not address that point here. Plaintiff will be allowed to proceed on his claim against Frisk.

3. Defendant Raymer

With respect to defendant Raymer, plaintiff told Raymer that he had been asking for his inhaler since the previous night and was forced to lie on the floor of his cell for air during the night because he could not breathe. Because defendants concede that plaintiff's symptoms at this time qualify as a serious medical need, it is difficult to argue that Raymer was not aware of a serious medical need after plaintiff reported those symptoms to Raymer. Although Raymer does not remember plaintiff's conversation with him that morning, at this stage of the proceedings, I must accept plaintiff's version of events.

In their brief, defendants write that plaintiff "has not alleged and cannot prove that Raymer was responsible for any delay in getting the inhaler to him once it reached the unit," Dfts.' Br., at 8, dkt. #33, but they fail to explain why that entitles them to summary

14

judgment. If Raymer was aware that plaintiff had a serious medical need, Raymer had a duty under the Eighth Amendment to take reasonable measures to provide plaintiff with treatment. Defendant Raymer admits that he could have contacted his supervisor and the Health Services Unit with any concerns about plaintiff's health. If Raymer had done that, plaintiff could have received his inhaler earlier; it is undisputed that the inhaler was available no later than 9:30 a.m. but plaintiff did not receive it until almost two hours later. Even if it was not ordinarily Raymer's job to bring the inhaler, he could have prevented the delay if he had acted when plaintiff first says he told Raymer that he needed help.

Because plaintiff has raised genuine issues of material fact that Raymer was aware that plaintiff had a serious medical need and disregarded it, I must deny defendants' motion for summary judgment with respect to plaintiff's claim against defendant Raymer.

ORDER

IT IS ORDERED that the motion for summary judgment filed by defendants Koreen

Frisk, Kelly Kutina and Jason Raymer, dkt. #32, is DENIED.

Entered this 22nd day of March, 2010.

          BY THE COURT:

           /s/

          _____
          BARBARA B. CRABB
          District Judge